UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NANCY L. MANN, Individually, and as Administratrix of the Estate of MAY HENSON, Deceased,

    Plaintiff,

vs.

ALLEGHENY COUNTY, as owner and operator of JOHN J. KANE REGIONAL CENTER - ROSS TOWNSHIP d/b/a KANE COMMUNITY LIVING CENTER,

    Defendant.

No.: 2:21-cv-1781

## PLAINTIFF'S COMPLAINT

AND NOW, comes the Plaintiff, Nancy L. Mann, Individually, and as Administratrix of the Estate of May Henson, deceased, by and through her undersigned counsel, Mark D. Troyan, Esquire., and files this Complaint for the Defendant's violations of duties imposed upon them under the Omnibus Budget Reconciliation Act of 1987 ("OBRA"), the Federal Nursing Home Reform Act ("FNHRA"), 42 U.S.C. § 139r, *et seq.,* and the implementing regulations found at 42 C.F.R. § 483, *et seq.,* and for violations of the Constitution of the United States of America under Amendment 14, enforceable under 42 U.S.C. § 1983, against the Defendant Allegheny County, as owner and operator of John J. Jane Regional Center-Ross Township d/b/a Kane community Living Center, a skilled nursing facility.

## NATURE OF ACTION

1.    This is a proceeding under 42 U.S.C. § 1983 to remedy deprivations of individuals rights under the Omnibus Budget Reconciliation Act of 1987, the Federal Nursing Home Reform Act, the Federal Nursing Home Regulations, as found at 42 C.F.R. § 483, and the Constitution of the United States of America.

## JURSIDICTION AND VENUE

2. As the instant case presents issues of Federal Law, jurisdiction is proper in this forum as a federal question, pursuant to 28 U.S.C. § 1331.

3. Venue lies within this judicial district since all of the actions complained of herein occurred within the Western District of Pennsylvania.

## PARTIES

4. Plaintiff, Nancy L. Mann, is an adult individual who resides at 15 Jerome Lane Cheswick, Allegheny County, Pennsylvania 15024.

5. Nancy L. Mann is the daughter and Administratrix of the decedent May Henson.

6. Defendant Allegheny County is a governmental agency with its governmental offices located at 436 Grant Street Pittsburgh, Allegheny County, Pennsylvania 15217.

7. John J. Kane Regional Center – Ross Township d/b/a Kane Community Living Center is a skilled nursing facility with its principal place of business located at 110 McIntyre Road Pittsburgh, Pennsylvania 15237.

8. Defendant Allegheny County owns and operates John J. Kane Regional Center – Ross Township d/b/a Kane Community Living Center.

9. As such, at all times relevant hereto, John J. Kane Regional Center – Ross Township d/b/a Kane Community Living Center operated as a "skilled nursing facility" as that term is defined in 42 U.S.C. §1395i-3.

10. At the time of the incidents pled herein, John J. Kane Regional Center – Ross Township d/b/a Kane Community Living Center was acting under the control of Allegheny County and was acting by and through its authorized agents, servants, and employees then and there acting within the course and scope of their employment.

11. Defendant Allegheny County is a county government organized and existing under the laws of the Commonwealth of Pennsylvania. At all times relevant hereto, Defendant Allegheny

County, acting through John J. Kane Regional Center-Ross Township d/b/a Kane Community Center, was responsible for the customs, policies, practices, supervision, implementation, and conduct of all matters pertaining to the John J. Kane Regional Center- Ross Township d/b/a Kane Community Center facility and was responsible for the appointment, training, supervision, and conduct of all John J. Kane Regional Center-Ross Township d/b/a Kane Community Center personnel. In addition, at all relevant times, Defendant Allegheny County was responsible for enforcing the rules of the John J. Kane Regional Center-Ross Township d/b/a Kane Community Center facility and for ensuring that personnel employed at the facility obey the Constitution and laws of the United States and the Commonwealth of Pennsylvania.

12. Hereinafter, Allegheny County's John J. Kane Regional Center-Ross Township d/b/a Kane Community Center will be collectively referred to as "Kane."

### Statement of Claims

13. Plaintiff incorporates by reference every prior and subsequent allegation as though fully set forth herein.

14. The facts relevant to the causes of action stated herein were known, or in the exercise of due diligence, should have been known to Defendant during May Henson's residency at Kane or upon her discharge from its facility.

15. At all times relevant hereto, Kane operated as a "skilled nursing facility" as that term is defined at 42 U.S.C. § 1395i-3.

16. At all times relevant hereto, Defendant Kane was acting independently and by and through its authorized agents, servants, and/or employees, who were then and there acting within the course and scope of their employment.

17. No other actions have been commenced regarding the injures Ms. Henson sustained at Kane.

18. Ms. Henson was admitted to Kane for rehabilitative care following a hip fracture in 2017, which resulted in impairing the mobility of Ms. Henson and increasing her fall risk.

19. Due to Ms. Henson's mobility limitation, she was at high risk for falls; Kane initially took numerous fall precautions, including chair and bed alarms and floor mats around her bed.

20. Throughout her residency at Kane, Ms. Henson had at least two recorded falls.

21. The first fall was on November 20, 2019; Kane staff witnessed Ms. Henson falling while ambulating in the facility.

22. After the fall on November 20, 2019, Ms. Henson's fall care plan and precautions remained unchanged.

23. However, despite Ms. Henson's risk for falls and recent documented fall, eight days later, on December 10, 2019, she fell again, this time unwitnessed while using her wheelchair, which resulted in a broken clavicle, broken humerus, and forehead laceration.

24. As the fall happened unwitnessed, it is unknown how long Ms. Henson was on the floor before someone assisted her.

25. Kane maintained a facility-wide order against the use of bed rails for all residents.

26. In addition, Kane was cited multiple times by the Department of Health for failing to comply with Federal Regulations, including in February 2019 and June 2019 for failing to keep residents from accident hazards, supervision, and devices (C.F.R. § 483.25(d)(1)(2)) and for failing to keep residents free from abuse and neglect (C.F.R. § 483.12(a)(1)) after residents fell and were injured due to the staff at Kane not providing them with a second person assist as ordered by the physician.

27. Following her fall, Ms. Henson was transported to UPMC Passavant, where staff performed x-rays and discovered a distal right clavicular fracture and chronic proximal humerus fracture.

28. Once admitted to UPMC Passavant, the orthopedics department recommended against surgical treatment and instead focused on managing Ms. Henson's pain.

29. UPMC Passavant's orthopedics department placed Ms. Henson in a sling for her injuries.

30. Ms. Henson's injuries healed; however, her condition gradually declined, as reflected by her medical records.

31. Ms. Henson died on July 1, 2020.

## COUNT I

### Deprivation of Civil Right Enforceable Via 42 U.S.C. § 1983

32. Plaintiff incorporates by reference every prior and subsequent allegation as though fully set forth herein.

33. Defendant Kane is an agent of the Commonwealth of Pennsylvania, and at all times relevant to this Complaint was acting under the color of state law.

34. Defendant Kane is bound generally by the Omnibus Budget Reconciliation Act of 1987 ("OBRA") and the Federal Nursing Home Reform Act ("FNHRA"), which was contained within the Omnibus Reconciliation Act of 1987. See 42 U.S.C. § 1396r, 42 U.S.C. § 1396(a)(w), as incorporated by 42 U.S.C. § 1396r.

35. Defendant Kane is also bound generally by OBRA/FNHRA implementing regulations found at 42 C.F.R. § 483, *et seq.*, which served to define and amplify specific statutory rights outlined in the statutes as mentioned above.

36. The specific detailed statutory provisions, along with the regulations in question, create individual rights which are enforceable pursuant to 42 U.S.C. § 1983, as the language of these statutes as defined and amplified by the regulations clearly and unambiguously creates those rights. Grammar v. John J. Kane Regional Centers Glen Hazel, 570 F.3d 520 (2009).

37. Upon information and belief, Kane, as a custom and policy, failed to adhere to the above statutes and regulations and/or, in the alternative, that Kane failed to implement and follow appropriate custom and policies and/or, in the alternative, that Kane had unwritten customs and policies that did not adhere to the applicable statutes and regulations.

38. Ms. Henson fell on two occasions at Kane during her residency, as these falls were documented. In addition, Kane was cited multiple times by the Department of Health for resident's falling and being injured.

39. This pattern of falls, both in Ms. Henson's case and as evidenced by Kane's history of citations related to falls, indicates that its policies, including those concerning fall prevention, abuse and neglect, resident safety, and care planning, were inadequate or in the alternative, and as a custom indicate that Kane and its employees did not follow its policies, including those concerning fall prevention, abuse and neglect, resident safety and care planning.

40. Defendant Kane, in derogation of the above statutes and regulations, and as a custom and policy, failed to comply with the regulation mentioned above as follows:

    a. By failing, as a custom and policy, to care for patients, including Ms. Henson, in a manner that promoted maintenance or enhancement of her life, as required by 42 C.F.R. § 483.24[1] and 42 U.S.C. § 1396r(b)(1)(A);

    b. By failing, as a custom and policy, to ensure that residents environments, including Ms. Henson's, remained free of accident hazards as is possible; and each resident, including Ms. Henson, received adequate supervision and assistance

---

[1] For the purposes of the within pleading, all references to the OBRA Regulations are to those that were in effect while Ms. Henson was a resident and during the time of Ms. Henson's injuries.

   devices to prevent accidents, as required by C.F.R. § 483.25(d)(1)(2);

c. By failing, as a custom and policy, to keep the residents, including Ms. Henson, free from abuse and neglect, including physical abuse, as required by C.F.R. § 483.12(a)(1);

d. By failing, as a custom and policy, to promote the care of residents, including Ms. Henson, in a manner and an environment that maintained or enhanced her dignity, as required by C.F.R. § 483.24 and 42 U.S.C. §1396r(b)(1)(A);

e. By failing, as a custom and policy, to develop a comprehensive Care Plan and assessment for residents, including Ms. Henson, as required by 42 C.F.R. § 483.21 and 42 U.S.C. § 1396r(b)(2)(A);

f. By failing, as a custom and policy, to provide residents, including Ms. Henson, the necessary care and services to allow her to attain or maintain the highest practicable physical, mental, and psycho-social wellbeing, as required by 42 C.F.R. § 483.24 and 42 U.S.C. § 1396r(b)(3)(A);

g. By failing, as a custom and policy, to ensure residents, including Ms. Henson, received necessary services to maintain good nutrition, grooming, and personal hygiene, as required by 42 C.F.R. § 483.24(a)(2).

h. By failing, as a custom and policy, to ensure residents, including Ms. Henson, received proper care and services for her daily living activities, namely her mobility, including transfer, ambulation, and walking, as required by 42 C.F.R. § 483.24(b)(2).

i. By failing, as a custom and policy, to provide residents, including Ms. Henson, the necessary care and services to preclude them from experiencing a reduction in range of motion and/or providing appropriate treatment and services to increase range of motion, as required by 42 C.F.R. § 483.25(c) and 42 U.S.C. § 1396r(b)(3)(A);

j. By failing, as a custom and policy, to ensure that the administrator of Kane met the standards established under 42 U.S.C. § 1396r(f)(4), as required by 42 U.S.C. § 1396r(d)(1)(C);

   k. By failing, as a custom and policy, to ensure that Kane was complying with the federal, state, local laws and accepted professional standards which apply to professionals providing services to residents, including Ms. Henson, and in operating such a facility as Kane, as required by 42 U.S.C. § 1396r(d)(4)(A); and,

   l. By failing, as a custom and policy, to ensure that Kane's administrator and director of nursing adequately monitored and supervised subordinate staff, thereby failing to ensure the health and safety of residents or patients, including Ms. Henson, in derogation of 42 C.F.R. §483.75 and 42 U.S.C. § 1396r(b)(B).

41. In particular, and as further evidence that Kane's failure was systemic and part of a custom policy, Kane has been cited numerous times between June of 2016 and July of 2019 for regulatory violations directly relevant to the allegations in Plaintiff's Complaint.[2] The regulations at issue amplify the mandates of the FNHRA. For example:

   a. On several occasions during this period, Kane has been cited for violations of 42 C.F.R. § 483.21(b)(1), Requirements for Develop/Implement Comprehensive Care Plans. Included among these citations were violations relating to the failure to develop and implement care plans for residents. These failures are pertinent concerning Ms. Henson's allegations against Kane;

   b. Kane has been cited for violations of 42 C.F.R. § 483.25(d)(1)(2), Requirements for Free from Accident Hazards, Supervision, Devices, on several occasions during this period. Including among these citations were violations for the facility for failing to make sure that each resident received adequate supervision and assistance devices to prevent accidents by failing to provide two-person assistance to residents when required by physician order allowing them to fall and be injured;

   c. On several occasions during this period, Kane has been cited for violations of 42 C.F.R. § 483.12(a)(1), Requirements for Free from Abuse and Neglect. Including among these citations were violations for the facility for failing to make

---

[2] Plaintiff has not attached the aforementioned citations as an exhibit due to their size. These citations are available at the Pennsylvania Department of Health's website at:
https://sais.health.pa.gov/commonpoc/Content/PublicWeb/ltc-survey.asp?Facid=364902&PAGE=1&NAME=JOHN+J+KANE+REGIONAL+CENTER+SCOTT+TOWNSHIP&SurveyType=H&COUNTY=ALLEGHENY

        sure that each resident was free from abuse or neglect, which included physical abuse, by failing to provide two-person assistance to residents when required by physician order allowing them to fall and be injured; and,

    d.    Kane has been cited for violations of 42 C.F.R. § 483.10(i)(1)-(7), Requirements for Safe/Clean/Comfortable/Homelike Environment, on several occasions during this period. Included among these citations were violations relating to the failure to ensure that residents receive care and services safely and that the facility's physical layout maximizes resident independence and does not pose a safety risk. These failures are pertinent concerning Ms. Henson's allegations against Kane.

42. The violations mentioned above indicate that Kane, as a policy and/or custom, was deliberately indifferent to Ms. Henson's needs, and as such, and in conjunction with other conduct described herein, deprived her of federally guaranteed and protected rights.

43. The repeated and systemic failures in the preceding Paragraphs, combined with the failures identified in Paragraphs 41 (a)-(d), demonstrate that Kane, as a custom and policy, failed to adhere to the above statutes and regulations and/or, in the alternative, that Kane failed to implement and follow appropriate customs and policies and/or, in the alternative, that Kane had unwritten customs and policies that did not adhere to the applicable statutes and regulations.

44. As a proximate result of Defendant Kane's actionable derogation of its regulatory and statutory responsibilities as above-described, Plaintiff-decedent, May Henson, was injured as previously referenced and suffered pain and distress due to the poor care and treatment which allowed her to suffer harm, as described herein.

45. As such, Plaintiff-decedent, May Henson suffered, and she is now entitled to recover the following damages, as well as an award of reasonable counsel fees, pursuant to 42 U.S.C. 1983 and 42 U.S.C. § 1988:

    a.    Money expended for hospital, medical, and nursing expenses incident to the injuries that Ms. Henson suffered as

     a result of the treatment and care rendered by Defendant during her stay at Kane;

 b. Pain, suffering, embarrassment, humiliation, inconvenience, anxiety, loss of enjoyment of life and nervousness of Ms. Henson; and,

 c. Other losses and damages permitted by law.

WHEREFORE, Plaintiff, Nancy L. Mann, Individually, and as Administratrix of the Estate of May Henson, deceased, demands compensatory damages from the Defendant Allegheny County, as owner and operator of John J. Kane Regional Center- Ross Township d/b/a/ Kane Community Center, a skilled nursing facility, in an amount in excess of Seventy-Five Thousand Dollars $75,000.00, plus interest, costs of suit, attorneys' fees and any other relief this Honorable Court deems appropriate.

A JURY TRIAL IS DEMANDED.

            Respectfully submitted,

            ROBERT PEIRCE & ASSOCIATES, P.C.

            By: /s/ *Mark D. Troyan*
               MARK D. TROYAN, ESQUIRE
               PA 313861
               707 Grant Street, Suite 125
               Pittsburgh, PA 15219
               412-281-7229
               412-281-4229 (fax)
               mtroyan@peircelaw.com
               Counsel for Plaintiff